NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

```
_____
                                   :
JAMIE K. HAYES,                    :
                                   :        Civil Action No.
             Plaintiff,            :        07-2239 (RBK)
                                   :
             v.                    :        O P I N I O N
PRISON HEALTH SERVICES, et al.,    :
                                   :
             Defendants.           :
_____:
```

**APPEARANCES:**

>        JAMIE K. HAYES, pro se
>        #37214
>        Cape May County Correctional Center
>        Cape May, New Jersey 08210

## Robert B. Kugler, District Judge

Plaintiff JAMIE K. HAYES (hereinafter "Plaintiff") currently confined at Cape May County Correctional Center, Cape May, New Jersey, seeks to bring this action in forma pauperis without prepayment of fees pursuant to 28 U.S.C. § 1915. Plaintiff submitted his (1) affidavit of indigence and institutional account statement pursuant to 28 U.S.C. § 1915(a) (1998); (2) complaint (hereinafter "Complaint"); and (3) various attachments and exhibits of hundred seventy four pages. Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), as of the date of this Opinion and accompanying

Page -1-

Dockets.Justia.com

Order, the Court will grant Plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) (1998) and order the Clerk of the Court to file the Complaint.

Plaintiff seeks compensatory damages, and--according to the caption in this matter--names the following parties as Defendants in this action: Prison Health Services; Larry Pettis, MD; Head Nurse Terry Brooks; Burdette Tomlin Memorial Hospital; Dr. Kevin Riordan; inmates Ruben Sanchez and Jose Castillo, and Harvey Strair, MD.  Plaintiff's numerous allegations against these Defendants could be roughly subdivided into three categories: (1) Plaintiff's assertions that certain Defendants were negligent in providing medical services or obtaining medical care for Plaintiff; (2) Plaintiff's suspicions that certain instances of such negligence might have been racially motivated; and (3) Plaintiff's claims against those Defendants who were Plaintiff's co-inmates and physically injured Plaintiff and/or exacerbated Plaintiff's medical injuries.  After thoroughly examining Plaintiff's submission, this Court dismisses certain Plaintiff's allegations for failure to state a claim upon which relief may be granted, and proceeds certain Plaintiff's claims to the next stage.


## STANDARD OF REVIEW

In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA"), Title VIII of the Omnibus Consolidated Rescissions and

Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996). Congress's purpose in enacting the PLRA was "primarily to curtail claims brought by prisoners under 42 U.S.C. § 1983 and the Federal Tort Claims Act . . . many of which are routinely dismissed as legally frivolous." Santana v. United States, 98 F.3d 752, 755 (3d Cir. 1996). A crucial part of the congressional plan for curtailing meritless prisoner suits is the requirement, embodied in 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), that a court must dismiss, at the earliest practicable time, any prisoner actions that are frivolous or malicious, fail to state a claim, or seek monetary relief from immune defendants. However, in determining the sufficiency of a complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. See Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court should "accept as true all of the allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court need not, however, lend credit to a pro se plaintiff's "bald assertions" or "legal conclusions." Id. Thus, "[a] pro se complaint may be dismissed for failure to state a claim only if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Milhouse v. Carlson, 652 F.2d 371, 373

(3d Cir. 1981) (quoting <u>Haines</u>, 404 U.S. at 520).


<b><u>DISCUSSION</u></b>

**A.  <u>Plaintiff's Claims Against His Co-inmates</u>**

Federal courts are courts of limited jurisdiction.  <u>See</u>
<u>Mansfield, C. & L. M. Ry. Co. v. Swan</u>, 111 U.S. 379, 383 (1884).
As the Supreme Court stated in <u>Bender v. Williamsport Area School</u>
<u>Dist.</u>, 475 U.S. 534, 541 (1986),

> it is appropriate to restate certain basic
> principles that limit the power of every
> federal court.  Federal courts are not courts
> of general jurisdiction; they have only the
> power that is authorized by Article III of the
> Constitution and the statutes enacted by
> Congress pursuant thereto.

To recover against a defendant under 42 U.S.C. § 1983, the
plaintiff must establish that the defendant acted under "color of
[state] law" to deprive him of a right secured by the federal
Constitution or laws,[1] <u>see</u> <u>Groman v. Twp. of Manalapan</u>, 47 F.3d
628, 633 (3d Cir. 1995), since Section 1983 does not create

---

[1]

Section 1983 provides in relevant part that:

Every person who, under color of any statute, ordinance,
regulation, custom, or usage, or any State . . .
subjects, or causes to be subjected, any citizen of the
United States . . . to the deprivation of any rights,
privileges, or immunities secured by the Constitution and
laws, shall be liable to the party injured in an action
at law, suit in equity, or other proper proceeding for
redress.

Page -4-

substantive rights; rather, it provides an avenue of recovery for the deprivation of established federal constitutional and statutory rights.  See <u>Kneipp v. Tedder</u>, 95 F.3d 1199, 1204 (3d Cir. 1996); <u>Groman</u>, 47 F.3d at 633.

"The color of state law . . . is a threshold issue; there is no liability under [Section] 1983 for those not acting under color of law." <u>Id.</u> at 638.  The color of state law element in a section 1983 action requires that "the conduct allegedly causing the deprivation of [the plaintiff's rights] be fairly attributable to the State." <u>Lugar v. Edmonson Oil Co.</u>, 457 U.S. 922, 937 (1982). For the conduct to be "fairly attributable" to the State, (1) the deprivation must be caused by (a) the exercise of some right or privilege created by the State or (b) by a rule of conduct imposed by it or by a person for whom the State is responsible, and (2) the defendant must be a person who may fairly be said to be a state actor, either because the person (a) is a state official, (b) acted together with or has obtained significant aid from state officials, or (c) performed conduct otherwise chargeable to the State. See <u>id.</u> at 936-39.

The United States Supreme Court has articulated several instances where a private party's actions may be fairly attributed to state action, including when: (1) it results from the State's exercise of "coercive power"; (2) the State provides significant encouragement, either overt or covert; (3) a private actor operates

as a willful participant in joint activity with the State or its agents; (4) a nominally private entity is controlled by an agency of the State; (5) a private entity has been delegated a public function by the State; or (6) the private entity is entwined with governmental policies, or the government is entwined in its management or control. See Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n, 531 U.S. 288, 296 (2001) (internal quotations and citations omitted). The Court, in deciding whether a particular action or course of action by a private party is governmental in character, must examine: (1) the extent to which the actor relies on governmental assistance and benefits; (2) whether the actor is performing a traditional public function; and (3) whether the injury caused is aggravated in a unique way by the incidents of governmental authority. See Edmonson v. Leesville Concrete Co., 500 U.S. 614, 621 (1991). Thus, "the under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful," American Manufacturers Mutual Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) (quoting Shelley v. Kraemer, 334 U.S. 1, 13 (1948)), and a state action would exist only where the conduct allegedly causing the deprivation of a federal right is "fairly attributable to the State." Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937 (1982).

The color-of-state-law requirement is not satisfied with respect to Plaintiff's claims against Plaintiff's co-inmates, Defendants Ruben Sanchez and Jose Castillo.   While Plaintiff's Complaint details the injuries suffered by Plaintiff as a result of Defendant Sanchez and Castillo's actions, nothing in the Complaint indicates that Defendants Sanchez and/or Castillo injured Plaintiff with governmental assistance, or committed the wrongful acts while performing a traditional public function, or relied on any governmental authority in order to injure Plaintiff.  Compare Edmonson, 500 U.S. at 621.   Thus, Plaintiff's claims against Defendants Sanchez and Castillo will be dismissed for failure to state a claim upon which relief may be granted because no statement made in the Complaint indicates that these co-inmates acted under the color of law (or that the prison authorities violated Plaintiff's Eighth Amendment rights by failing to protect Plaintiff).[2]

_____

[2]    Prison officials have a duty under the Eighth Amendment to "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-7 (1984)).  To state a failure-to-protect claim under 42 U.S.C. § 1983, an inmate must show that (1) he is/was objectively "incarcerated under conditions posing a substantial risk of serious harm," and (2) the defendant knows of and disregards that risk.  Farmer, 511 U.S. at 837; Whitley v. Albers, 475 U.S. 312, 319 (1985).  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Since, in the case at bar, Plaintiff's Complaint contains no facts that might be interpreted by this Court as indications of the two elements stated in Farmer, the Court has no reason to construe Plaintiff's Complaint as a "failure to protect"

## C.    Plaintiff's Claims Based on Eighth and Fourteenth Amendments

Plaintiff has a protected right in being incarcerated at a place of confinement confirming to the standards set forth by the Eighth Amendment.   The Constitution "does not mandate comfortable prisons," Rhodes v. Chapman, 452 U.S. 337, 349 (1981), but neither does it permit inhumane ones, and it is now settled that ""he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993).  In its prohibition of "cruel and unusual punishments, the Eighth Amendment . . . imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials . . . must take reasonable measures to guarantee the safety of the inmates." Hudson v. Palmer, 468 U.S. 517, 526-527 (1984), see Helling, 509 U.S. at 31-32; Washington v. Harper, 494 U.S. 210, 225 (1990); Estelle v. Gamble, 429 U.S. 97, 103 (1976).  The Eighth Amendment prohibits conditions which involve the unnecessary and wanton infliction of pain or are grossly disproportionate to the severity of the crime warranting imprisonment.  Rhodes, 452 U.S. at 346, 347.  The cruel and unusual punishment standard is not static, but is measured by "the evolving standards of decency that mark the progress of a maturing society." Rhodes, 452 U.S. at 346 (quoting Trop v. Dulles, 356 U.S. 86, 101 (1958)).

---

claim under the Eighth Amendment.

Thus, to prevail on a medical care claim under the Eighth Amendment, an inmate must show that the defendants were deliberately indifferent to his serious medical needs. See Estelle v. Gamble, 429 U.S. 97; Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). Persistent severe pain qualifies as a serious medical need. A medical need is serious where it "has been diagnosed by a physician as requiring treatment or is . . . so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

"Deliberate indifference" exists "where [a] prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Rouse, 182 F.3d at 197. Furthermore, deliberately delaying necessary medical diagnosis for a long period of time in order to avoid providing care constitutes deliberate indifference that is actionable. See Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993). Deliberate indifference is also evident where officials erect arbitrary and burdensome procedures that result in interminable delays and denials of medical care to suffering inmates. See Monmouth County Correctional Institution Inmates v. Lanzaro, 834

F.2d 326, 346-47 (3d Cir. 1987), <u>cert. denied</u> 486 U.S. 1006 (1998). However, neither inconsistencies or differences in medical diagnoses, nor refusal to consider inmate's self-diagnoses, to summon the medical specialist of the inmate's choice, to perform tests or procedures that the inmate desires, to explain to the inmate the reason for medical action or inaction, or to train the inmate to perform medical procedures can amount to cruel and unusual punishment. <u>See</u> <u>White v. Napoleon</u>, 897 F.2d 103 (3d Cir. 1990) (mere disagreements over medical judgment do not state Eighth Amendment claims).

Here, the caption in the matter indicates that Plaintiff named three medical doctors as Defendants: Larry Pettis, Kevin Riordan and Harvey Strair.

With respect to Defendant Pettis, Plaintiff alleges that, on June 3, 2004, and on June 12, 2005, Defendant did not provide all those "medical treatments" that Plaintiff felt were due to him. <u>See</u> Compl. ¶ 4(b). Such allegations fail to state a claim upon which a relief may be granted. Plaintiff's claims based on the occurrences of June 3, 2004, are time barred. The statute of limitations in a § 1983 action is determined by state law. <u>See</u> <u>Wilson v. Garcia</u>, 471 U.S. 261, 276 (1885). Here, the applicable statute of limitations is two years. <u>See</u> <u>Bougher v. University of Pittsburgh</u>, 882 F.2d 74, 78 (3d Cir. 1989). § 1983 action accrues when the Plaintiff knew or should have known of the injury on which

his claim is predicated.  See Sameric Corp. of Delaware v. City of
Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998).  Since the alleged
events took place on June 3, 2004, while Plaintiff's Complaint was
submitted for filing only on May 11, 2007, that is, almost three
years after the events at issue, Plaintiff's June 3, 2004, claims
are time barred.

Moreover, Plaintiff's allegations against Defendant Pettis
based on June 12, 2005, occurrences fails to state a claim, since
a doctor's decision not to supply his/her inmate-patient with all
those medical services that the patient desires or believes to be
proper cannot amount to a constitutional violation.  See Durmer v.
O'Carroll, 991 F.2d 64 (3d Cir. 1993); White v. Napoleon, 897 F.2d
103 (3d Cir. 1990); Gatewood v. Hendrick, 368 F.2d 179 (3d Cir.
1966), cert. denied, 386 U.S. 925 (1967) (prisoner who did not
claim that he was denied any medical care but rather that he
received only inadequate medical care, and gave no indication that
he sustained serious physical injury as result of alleged
inadequate treatment, failed to state claim for relief); see also
Alsina-Ortiz v. Laboy, 400 F.3d 77 (1st Cir. 2005)(a doctor's
failure to respond to certain request for services by the inmate,
in context of the doctor's continued and regular services, did not
deprive the inmate of a meaningful treatment); Watson v. Weldon,
2000 U.S. Dist. LEXIS 11109 (D.S.C. Jan. 12, 2000) (prisoner's
claim that prison doctor's slow treatment of plaintiff's injury was

cruel and unusual punishment failed to state a claim for relief).
Therefore, Plaintiff's claims against Defendant Pettis will be
dismissed for failure to state a claim upon which relief may be
granted.

Plaintiff's claims against Defendant Riordan read as follows:

Physician Kevin Riordan never examined [Plaintiff's] face
as [well as] he would [examine] any other patient coming
into [the] emergency room for similar major injuries
mainly d[ue] to [Plaintiff] being a black male patient
coming into emergency room for racially discriminat[ing]
"limiting" treatment to [Plaintiff] causing him to
"suffer" a great deal of pain by not receiving the full
care needed: [Defendant Riordan] didn't x-ray
[Plaintiff's] face and told [the] sherif to have
[Plaintiff] put ice pack on face only.  Full medical care
[was] denied.

Compl. at 9.   It appears that Plaintiff attempts to assert that
Defendant Riordan's actions violated Plaintiff's Eighth Amendment,
as well as Equal Protection rights.

The Equal Protection Clause provides that no state shall "deny
to any person within its jurisdiction the equal protection of the
laws." U.S. Const. amend. XIV.  This is not a command that all
persons be treated alike, but, rather, a direction that all persons
similarly-situated be treated alike.   See City of Cleburne v.
Cleburne Living Center, 473 U.S. 432, 439  (1985).   "The Equal
Protection Clause commands that no State shall 'deny to any person
within its jurisdiction the equal protection of the laws.'" Vacco
v. Quill, 521 U.S. 793, 799 (1997).   "The central purpose of the
Equal Protection Clause of the Fourteenth Amendment is the

prevention of official conduct discriminating on the basis of race," Washington v. Davis, 426 U.S. 229, 239 (1976), or any other suspect classification. See, e.g., Bakke v. California Bd. of Regents, 438 U.S. 265, 291 (1978) ("the guarantee of equal protection cannot mean one thing when applied to one individual and something else when applied to a person of another color" and "racial and ethnic distinctions of any sort are inherently suspect and thus call for the most exacting judicial examination").

Here, Plaintiff's Equal Protection claim is limited solely to Plaintiff's conjecture that, had a non-African-American inmate with injuries similar to those of Plaintiff been brought to Defendant Riordan's care, Defendant Riordan would have provided better medical services to such non-African-American inmate. However, Plaintiff cannot make a factual allegation out of Plaintiff's guesswork: Plaintiff's Complaint has to indicate at least some facts in support of such unequal treatment: Plaintiffs may not "build a case on the 'gossamer threads of whimsey, speculation and conjecture.'" Keller v. Bluemle, 571 F. Supp. 364, 371 (E.D. Pa. 1983), aff'd, 735 F.2d 1349 (3d Cir. 1984); see also Advo, Inc. v. Philadelphia Newspapers, Inc., 51 F.3d 1191, 1197 (3d Cir. 1995).

Similarly, Plaintiff's Eighth Amendment claim against Defendant Riordan has no merit. While this Court does not doubt that Plaintiff was disappointed by not receiving an X-ray test and disagreed with the treatment prescribed, sincerely believing that

certain testing or treatments were due to him, Plaintiff's disappointments or disagreements do not amount to a constitutional violation. See Ford v. Lane, 714 F. Supp. 310 (N.D. Ill. 1989) ("The question whether an X-ray--or any additional diagnostic techniques or forms of treatment--is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment") (quoting Estelle, 429 U.S. at 107); accord White v. Napoleon, 897 F.2d 103 (mere disagreements over medical judgment do not state Eighth Amendment claims); Jones v. Lockhart, 484 F.2d 1192 (8th Cir. 1973) (allegations of mere differences of opinion over matters of medical judgment fail to state a federal constitutional question); Hyde v. McGinnis, 429 F.2d 864 (2d Cir. 1970) (a difference of opinion between physician and patient did not sustain a claim under § 1983; the conduct must be so harmful that it should be characterized as a barbarous act that shocked the conscience); Church v. Hegstrom, 416 F.2d 449 (2d Cir. 1969) (mere negligence does not suffice to support a § 1983 action); Goff v. Bechtold, 632 F. Supp. 697 (S.D. W. Va. 1986) (denial of preferred course of treatment does not infringe constitutional rights). In sum, Plaintiff's claims that he was dissatisfied with Defendant Riordan's medical treatment fail to state a claim upon which relief may be granted. See Estelle, 429 U.S. 97; Durmer, 991 F.2d 64; White v. Napoleon, 897 F.2d 103.

Finally, Plaintiff asserts that Defendant Strair, an orthopedic surgeon, committed medical malpractice by improper alignment of Plaintiff's jaw during the surgery.[3] <u>See</u> Compl. at 13. Such claim cannot amount to a constitutional violation actionable under § 1983: claims of negligence or malpractice are not sufficient to establish "deliberate indifference." <u>See</u> <u>Rouse v. Plantier</u>, 182 F.3d 192, 197 (3d Cir. 1999); <u>White v. Napoleon</u>, 897 F.2d at 106 ("Mere medical malpractice cannot give rise to a violation of the Eighth Amendment"); <u>Church</u>, 416 F.2d 449 (mere negligence does not suffice to support a § 1983 action); <u>see also</u> <u>Estelle</u>, 429 U.S. at 106; <u>Boring v. Kozakiewicz</u>, 833 F.2d 468 (3d Cir. 1987); <u>Bass v. Sullivan</u>, 550 F.2d 229(5th Cir. 1977), <u>cert. denied</u>, 434 US 864 (1977); <u>Rivera v. Small</u>, 1983 U.S. Dist. LEXIS 15869 (S.D.N.Y. June 29, 1983).

Therefore, Plaintiff's claims against those Defendants-doctors who are listed in the caption of this matter, that is, Doctors Pettis, Riordan and Strair, will be dismissed for failure to state a claim upon which relief may be granted.

However, Plaintiff also states numerous claims against two other medical practitioners, Head Nurse Terry Brooks and Doctor Windy (a physician not listed in the caption of this matter as a defendant, but referred to in the body of the Complaint in the

---

[3]

Plaintiff filed a medical malpractice state law action against Defendant Strair. <u>See</u> Compl. at 13.

fashion unambiguously indicating Plaintiff's intent to designate Doctor Windy as a Defendant in this action). See Compl. at 8, 14. While Plaintiff's allegations against Head Nurse Terry Brooks and Doctor Windy are patchy at best, the Complaint suggests that Defendant Brooks delayed Plaintiff's medical treatment "for weeks," and Doctor Windy took Plaintiff off liquid diet at the time when Plaintiff's injuries did not allow Plaintiff to consume solid food. See id. Since further discovery of these matter might provide facts enabling Plaintiff to state a claim against Defendant Terry Brooks and Doctor Windy, the Court finds that, at this juncture, dismissal of Plaintiff's claims against them would be unwarranted and, therefore (1) will proceed these claims to the next stage; and (2) direct the Clerk of the Court to amend the caption in this matter to add Doctor Windy as a Defendant.

C.    **Plaintiff's Respondeat Superior Claims**

In addition to the above-discussed Defendants, Plaintiff designates two business entities as Defendants in this action: Prison Health Services and Burdette Tomlin Memorial Hospital. However, Plaintiff's Complaint is void of any allegations against these business entities, the only references made to them indicate that Plaintiff named them as Defendants solely on the grounds that these entities employ or were employing other Defendants named in this action. Such allegations, however, are insufficient to state

a claim against an employing entity, even if this Court is to construe Plaintiff's statements as allegations that these business entities were "supervisors" of other, potentially liable, Defendants.

Where a plaintiff seeks to establish liability based on a supervisor's failure to train or supervise adequately, the plaintiff must show that a need for more or different training or supervision was so obvious, and the inadequacy so likely to result in constitutional violations, that the failure to train or supervise could fairly be said to represent official policy. See City of Canton v. Harris, 489 U.S. 378, 388-92 (1989); Stoneking v. Bradford Area School Dist., 882 F.2d 720, 724-26 (3d Cir. 1989), cert. denied, 493 U.S. 1044 (1990); see also Polk County v. Dodson, 454 U.S. 312, 324 (1981) (stating that a § 1983 claim cannot be based on respondeat superior liability); Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978) (holding that supervisory personnel are liable under § 1983 only if they have some personal role in causing the alleged harms or were responsible for some custom or practice which resulted in the violations).

In the case at bar, Plaintiff's voluminous submission is void of any indication that the supervision provided by Defendants Prison Health Services and Burdette Tomlin Memorial Hospital was such to transfer the alleged wrongdoings into an official policy of

these entities. Therefore, Plaintiff's claims against these Defendants-business entities will be dismissed for failure to state a claim upon which relief may be granted.

## CONCLUSION

For the reasons stated in this Opinion, Plaintiff's application to proceed in forma pauperis is GRANTED. Plaintiff's claim against Defendants Prison Health Services and Burdette Tomlin Memorial Hospital, doctors Larry Pettis, Kevin Riordan, Harvey Strair, and inmates Ruben Sanchez and Jose Castillo will be dismissed with prejudice for failure to state a claim upon which relief may be granted.

Plaintiff's claims against Terry Brooks and Doctor Windy will proceed past sua sponte dismissal to the next stage.

An appropriate Order accompanies this Opinion.


s/Robert B. Kugler
**ROBERT B. KUGLER**
**United States District Judge**

Date: May 24, 2007